### BROWERE v. CARPENTER.

(Supreme Court, Appellate Term. June 1, 1906.)

1. CONTRACTS—EXTENSION OF TIME—CONSIDERATION.

Payment of a portion of a note before it fell due constituted a sufficient consideration for the holder's agreement extending the time for payment of the balance.

[Ed. Note.—For cases in point, see vol. 11, Cent. Dig. Contracts, §§ 242, 1121.]

2. COMPROMISE AND SETTLEMENT—PERFORMANCE—JUDGMENTS—ENTRY.

Plaintiff having commenced actions on certain notes, a settlement was arranged by which defendant gave other notes, which, if not paid at maturity, should be considered as security for the former notes to the amount specified therein only, and plaintiff to be at liberty to proceed with the actions to judgment as though the settlement had not been made. Prior to the maturity of the first note, defendant applied for an extension on payment of a portion thereof, and was referred to B., an indorsee. B. agreed to the extension, and after payment of the portion of the note plaintiff entered judgments on the original notes under the settlement agreement. *Held*, that plaintiff was only entitled to enter such judgments in the event of the absolute failure of defendant to perform the conditions of the settlement, and, having led defendant to believe that a strict compliance with the settlement would not be insisted on, was estopped to claim a breach thereof, because of such extension.

3. BILLS AND NOTES—INDORSERS—DISCHARGE—EXTENSION OF TIME.

The extension of time granted by the holder of a note, if without the knowledge or consent of the indorsers, operated to relieve them from liability.

[Ed. Note.—For cases in point, see vol. 7, Cent. Dig. Bills and Notes, §§ 707–711.]

Appeal from City Court of New York, Special Term.

Action by Rinaldo A. Browere against George H. Carpenter. From an order denying defendant's motion to vacate certain judgments and permit defendant to defend, he appeals. Reversed.

Argued before GILDERSLEEVE, DAVIS, and CLINCH, JJ.

Dittenhoefer, Gerber & James (David Gerber and I. M. Dittenhoefer, of counsel), for appellant.

Francis M. Applegate, for respondent.

GILDERSLEEVE, J. The defendant was largely indebted to the plaintiff, evidenced by several promissory notes upon which actions had been commenced, and in one of which actions judgment had been entered. Being desirous of arranging for a full settlement of all the claims that plaintiff had against him, defendant entered into negotiations with plaintiff, and a compromise agreement, on October 19, 1905, was entered into in writing between the parties, by the terms of which the defendant agreed to give other notes made by the Monarch Fire Appliance Company indorsed by the defendant, amounting to $2,600, and also to pay the costs of the litigation. These notes were made and delivered, and the costs paid. The stipulation or agreement between the parties contained a clause that, in case said notes should not be paid at the time specified in said notes, they should be considered as security for the payment of the former notes of the defendant to the amount specified therein only, and not as full payment of the entire indebtedness of the defendant, and upon default in the payment of said notes, or any part thereof, the plaintiff herein "shall be at liberty to proceed with the aforementioned actions to judgment as though the stipulation had not been made." If said notes were fully paid at their maturity, then the defendant's indebtedness was satisfied in full. One of the notes, for $1,805, maturing February 24, 1906, is the cause of the present controversy. Some three weeks before this note fell due, the defendant wrote to plaintiff and asked him to take $405 and a new note for $1,-400 for 60 days. To this letter the plaintiff replied, saying that one Bradly was then the owner of the note. Subsequently, in a personal interview with the plaintiff, the plaintiff again informed the defendant that Bradly owned the note, and that if the defendant desired to "do anything in reference to said note he must communicate with Bradly," and, upon being asked by defendant if he (plaintiff) had any objections to his (defendant) communicating with Bradly and obtaining the extension asked for, plaintiff replied that "he did not care what defendant or Bradly did." Subsequently the defendant and the attorney for Bradly, acting for him, entered into an agreement by which $805 was paid before the maturity of the note referred to, and the time of payment of the balance of $1,000 due thereon was extended until April 11, 1906. For the purpose of holding the indorsers the note was, however, presented for payment and protested for nonpayment. The attorney who represented Bradly, and agreed upon his part to the extension of the time of payment of the note, seems also to have been the attorney for the plaintiff, as within a few days after the note was protested by him, as a notary public acting in the interest of his client Bradly, he, as attorney for the plaintiff, claiming that the failure to pay said note at its maturity canceled the agreement, without notice to the defendant entered judgments in the eight prior actions against the defendant, and from an order denying the defendant's motion to open the defendant's default this appeal comes up.

The defendant immediately, and before this motion to open his de-

fault was heard in the court below, paid the balance of the $1,805 note. The plaintiff was only entitled to enter judgment upon the original notes sued on, in the event of the absolute failure of the defendant to fully perform the conditions set forth in the written agreement. He predicated his right to so enter the judgments upon defendant's failure to pay the $1,805 note, which fell due February 24, 1906. The time of payment upon the $1,000 portion thereof was extended by Bradly for a valid consideration, viz., the payment of $805, part thereof, before the due date of the note. The defendant obtained this extension with the tacit consent of the plaintiff. He was duly informed that the defendant was about to apply for such an extension, and asked if he objected thereto, and made no objection. If he had intended to exact strict compliance on the part of the defendant with the terms of the contract as to time of payment, he should have so informed him when he was asked to make his objections to the defendant's obtaining an extension for part payment of the note. This he did not do. Having remained silent when he should have spoken, he should not now speak, when by his silence, if not by his language, he disarmed the defendant of any suspicion that he was being led into a violation of his agreement to pay upon February 24, 1906. It is true the plaintiff denies that he did state to the defendant that he must communicate with Bradly regarding the note; but he does not deny the interview, or that defendant asked for an extension of the time of payment. Nor does he claim that he refused to consent to such extension being obtained. The defendant should be permitted to have his day in court, and the issues between the parties should not be determined upon affidavits. The situation of the plaintiff and his wife, as indorsers of the note to Bradly, was in no way altered to their injury. If the extension of time granted by Bradly was without their knowledge and consent, they were relieved from liability, and so far as the plaintiff is concerned the note was paid. In any event they were relieved from liability to the extent of the payment made before the note was due.

Order reversed, with $10 costs and disbursements, and motions granted in each action. All concur.